Argued and submitted November 1, 1999, affirmed January 26, 2000

Joy E. LEFEBVRE,
*Respondent,*

*v.*

Thomas G. LEFEBVRE,
*Appellant.*

(C990184RO; CA A105511)

996 P2d 518

Michael S. Evans argued the cause for appellant. With him on the brief were Evans & Zusman, P.C., and David N. Hobson, Jr. and Hobson Hobson & Angell, P.C.

Jeffrey F. Renshaw argued the cause for respondent. With him on the brief was Yates, Matthews & Associates, P.C.

Before Landau, Presiding Judge, and Linder, Judge, and Brewer, Judge.

BREWER, J.

## BREWER, J.

Respondent challenges the legal sufficiency of the allegations and evidence underlying a restraining order entered against him pursuant to the Family Abuse Prevention Act (FAPA), ORS 107.700 through ORS 107.732. We review *de novo* and affirm.

Petitioner and respondent were married in 1987 and separated in September 1998. They have a nine-year-old son, who lives with petitioner. In her petition for a FAPA order, petitioner alleged that, after their separation, respondent persistently harassed and frightened her. According to her petition and her later testimony at a hearing in which respondent challenged the FAPA order, respondent barricaded her out of her house. He telephoned many of her friends and apparently told them a disparaging "story" about her. He went to the school where she was a student teacher. While at her house for parenting time, he went through her dresser drawers and her garbage, and took a letter, a note, and a receipt. He made frequent hang-up calls to her house and stopped only when he learned she had installed a caller identification box. During an argument, while standing only a few inches away from her, he screamed obscenities at her in the presence of their son. Most alarming to petitioner was an episode in which he called her late at night and described accurately what she was wearing to bed.[1] Some days later, at 1:30 a.m., he tapped on her window, a method of communication the two had used in the past but never so late at night. In the context of what petitioner considered increasingly obsessive behavior, respondent's late night telephone call and subsequent visit frightened her. That fear was enhanced, according to petitioner, by an episode nine years earlier in which respondent was obsessed, for a period of six months, with killing his former employer. Petitioner also expressed concern about the fact that respondent, who resided with his police officer brother after the separation, had easy access to

---

[1] Respondent denies this, but the trial court disbelieved him. We defer to the trial court's assessment of his credibility in the absence of a reason to do otherwise. *Kempke and Kempke*, 151 Or App 434, 440, 949 P2d 1239 (1997); *Obrist v. Harmon*, 150 Or App 173, 177, 945 P2d 1089 (1997).

weapons. Petitioner alleged no actual or overtly threatened physical violence.

Petitioner sought and obtained an *ex parte* FAPA restraining order. Respondent requested a hearing to contest the order. In upholding the order, the trial court found:

> "I'm satisfied that the 1:30-in-the-morning incident at the window, combined with the argument that the parties had in front of the child, the apparently looking through items in the house while he has been in the house, knowing what she was wearing, that those factors, combined with his conduct towards a previous employer, are sufficient that the Court is satisfied that [petitioner] has been placed in fear of immediate serious bodily injury, and the restraining order is to remain in effect."

On appeal, respondent asserts that petitioner's allegations and supporting evidence were insufficient as a matter of law to support the issuance of a FAPA order.

We review *de novo.* ORS 19.415(3); *Boldt v. Boldt,* 155 Or App 244, 246, 963 P2d 719 (1998). Under ORS 107.718(1), a court may issue a restraining order on a showing that the petitioner "has been the victim of abuse committed by the respondent within 180 days preceding the filing of the petition and that there is an immediate and present danger of further abuse to the petitioner[.]" *See also* ORS 107.710(1). ORS 107.705 defines "abuse" as

> "(1)   * * * the occurrence of one or more of the following acts between family or household members:
>
> "(a)   Attempting to cause or intentionally, knowingly or recklessly causing bodily injury.
>
> "(b)   *Intentionally, knowingly or recklessly placing another in fear of imminent serious bodily injury*;
>
> "(c)   Causing another to engage in involuntary sexual relations by force or threat of force." (Emphasis added.)

Petitioner alleged that respondent placed her "in fear of [imminent] serious bodily injury." ORS 107.705(1)(b). Respondent disputes the trial court's determination that his actions constitute "abuse" under FAPA. Instead, he characterizes his pattern of conduct as amounting to no more than

"unwanted involvement." Specifically referring to the allegation that he screamed obscenities at petitioner, respondent denies that she could have been in fear, because there was no history of physical abuse in the parties' marriage. Finally, he argues that the statute requires more threatening conduct than that which he committed in order to authorize the issuance of a FAPA order. Petitioner responds that the trial court was entitled to rely on the totality of the circumstances that placed her in fear in order to uphold the order. We agree with petitioner.

■      An overt threat is not required in order to authorize the issuance of an abuse prevention restraining order. Instead, FAPA requires that the respondent has "intentionally, knowingly or recklessly" placed the petitioner in fear of "imminent serious bodily injury." ORS 107.705(1); ORS 107.710(1). In addition, the petitioner must be in immediate danger of further abuse. *Id.* As to the latter requirement, respondent correctly points out that our previous reported decisions upholding FAPA orders have generally involved more overtly threatening conduct than that present here. *See Cottongim v. Woods*, 145 Or App 40, 44, 928 P2d 361 (1996) (respondent told petitioner he would "do anything he could to make [her] life hell" and wished her a "long, slow painful death")331 ; *Strother and Strother*, 130 Or App 624, 630, 883 P2d 249 (1994), *rev den* 320 Or 508 (1995) (name calling normally preceded pattern of battering in abusive relationship). However, that fact alone does not mean that actual threats are necessary to support a FAPA order.

■      In *Cottongim*, we held that the respondent's behavior fulfilled the statutory definition of abuse because it "deviated considerably from that which a reasonable person would exhibit under similar circumstances[,] and a reasonable person faced with such behavior would be placed in fear of imminent serious bodily harm." *Id.* at 45. The same reasoning applies here as well. Respondent's conduct was erratic, intrusive, volatile, and persistent. He screamed obscenities in petitioner's face, unrestrained by the presence of their child, made numerous hang-up phone calls, and rummaged through her possessions. Notably, respondent's late night call describing the sleeping clothes petitioner was wearing

put her on notice that he was lurking about her house, watching her, and that she was vulnerable. Moreover, petitioner knew that respondent had previously been obsessed with the idea of killing another person. Despite the lack of an explicit threat, the totality of the circumstances supports petitioner's assertion that respondent at least recklessly[2] placed her in fear of imminent serious bodily injury and in immediate danger of further abuse.

Respondent cites *Fogh v. McRill*, 153 Or App 159, 165, 956 P2d 236, *rev den* 327 Or 431 (1998), for the proposition that a restraining order is improper where there is no overt threat and only a "minimal level" of physical conflict. That case involved a domestic dispute in which two discrete physical acts had occurred: the plaintiff thought that the defendant had pushed a table into her, and the defendant splashed water into the plaintiff's face. *Id.* at 162-63. *Fogh* only peripherally addressed the requirements of a FAPA order and is distinguishable from the circumstances here. *Fogh* was an action for dissolution of a domestic partnership and for economic damages. In that case, we found that the plaintiff "did not have sufficient cause to oust [the] defendant from * * * the partnership property by obtaining [a FAPA] order." *Id.* at 165. In *Fogh*,331 there was no evidence that the defendant had a previous obsession with violence, nor was any harassment or persistent stalking-type behavior alleged, as in this case. In short, the low-level conflict in *Fogh* took place in an entirely different, and less ominous, factual context than did the acts established in this case.

■ Finally, in passing, respondent contends that "[t]he incident relating to [his obsession with his former employer] did not concern [petitioner] and [is] eight and a half years too remote to be the basis of a FAPA Order," which requires that abuse have occurred within 180 days of the filing of the petition. We disagree with respondent's premise. The trial court did not sustain the order on "the basis" of the remote conduct; it considered that behavior "combined with" the more recent

---

[2] The trial court made no express finding concerning respondent's mental state. However, we presume that the court found the facts necessary to support the issuance of the restraining order. *See Loverin v. Paulus*, 160 Or App 605, 612, 982 P2d 20 (1999). On *de novo* review, we agree that respondent acted at least recklessly.

incidents, and sustained the order in light of all of the circumstances.

Previously, we have allowed testimony regarding events outside FAPA's jurisdictional window for the purpose of establishing the imminent danger of further abuse. *Strother*, 130 Or App at 630. In *Strother*, the petitioner testified in a FAPA hearing that the respondent had physically abused her within 180 days of the date she filed for a restraining order. *Id.* She also testified that she feared the respondent because, at the time of the incident that was the subject of the hearing, he made statements to her similar to statements he made during previous incidents of abuse outside the jurisdictional window. *Id.* at 629-30. The trial court upheld the restraining order "on the basis of * * * verbal statements [that] caused her to be placed in fear." *Id.* at 630. We affirmed, based on the recent incident of physical abuse, but also because the

> "[petitioner's] testimony that the statements [the respondent] made to her were similar to the ones that preceded the battering during the marriage was sufficient to establish that, at the time of the filing of the petition, [the petitioner] was in immediate, present danger of further abuse." *Id.*

Likewise, in this case, as discussed above, abuse occurred within 180 days of the date wife filed the FAPA petition. The testimony regarding respondent's previous obsession with killing his employer, as in *Strother*, was relevant to the issue of whether petitioner was in immediate danger of further abuse. Therefore, the trial court properly considered it.

Affirmed.